IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

L.H.,[1]

        Plaintiff,

v.                                                                          Case No. 25-1052-JWB

FRANK BISIGNANO,
Commissioner of Social Security,[2]

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Plaintiff's action requesting judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability benefits. (Doc. 9.) Plaintiff and the Commissioner have each filed a brief. (Docs. 9, 13.) Plaintiff has filed her reply (Doc. 16), and the matter is accordingly fully briefed and ripe for decision. For the reasons stated herein, the decision of the Commissioner is AFFIRMED.

**I.      Facts and Procedural History**

On September 13, 2021, Plaintiff filed an application for disability insurance benefits with the Social Security Administration ("SSA") under Title II of the Social Security Act (the "Act"). (Doc. 8 at 22.) Plaintiff claims her alleged onset date ("AOD"), or when her disability began, was July 15, 2020. (*Id*.) Plaintiff's hearing took place on December 14, 2023. (*Id*.) Following the hearing, the ALJ denied Plaintiff's claim for benefits in a decision dated March 1, 2024. (*Id*. at

---

[1] The court will use Plaintiff's initials for privacy concerns.

[2] Frank Bisignano was confirmed by the U.S. Senate to lead the Social Security Administration ("SSA") on May 7, 2025, during the pendency of this case. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted for Leland Dudek as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

22–33.)  Plaintiff requested review of that decision by the Appeals Council, which was denied on February 20, 2025.  (*Id*. at 6–8.)

At the hearing held on December 14, 2023, the ALJ determined that Plaintiff had the three following severe impairments: cervical spine degenerative disc disease, lumbar spine degenerative disc disease, and depression.  (*Id*. at 24–25.)  The ALJ determined, however, that the severe impairments did not meet or equal the criteria of any listed impairment or of a combination of those impairments equivalent in severity to a listed impairment.  (*Id*. at 25.)  Thus, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 CFR § 404.1567(c) with the exception of no climbing of ladders, ropes, or scaffolds. (*Id*.)  She is able to occasionally crawl, as well as reach overhead with both upper extremities.  The claimant can frequently climb ramps and stairs, stoop, kneel, and crouch.  She can have no concentrated exposure to extreme cold or vibration.  And finally, the claimant has the ability to understand, follow, and complete simple, repetitive, routine tasks, and instructions in jobs with no more than occasional changes in the work setting.  (*Id*. at 26–31.)

The ALJ concluded, based on Plaintiff's age, education, work experience, and RFC, that there are a sufficient number of jobs in the national economy that Plaintiff can perform.  (*Id*.)  In so doing, the ALJ found that Plaintiff is capable of performing past relevant work as a cook, fast food, and a kitchen helper.  (*Id*. at 31.)  Thus, the ALJ determined that Plaintiff was not entitled to receive disability benefits.  Plaintiff thus filed the instant complaint seeking review of that decision.

## II.    Standard

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial

2

evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Substantial evidence requires more than a scintilla and is satisfied by such evidence as a reasonable mind might accept as adequate to support the conclusion. *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019).

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). "Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the [Commissioner's] conclusions are rational." *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *See Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that he has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id*. at 751. If the claimant's impairment does not meet or equal a listed impairment, the agency determines

the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520, 404.1545.  The RFC represents the most that the claimant can still do in a work setting despite her impairments.  *See Cooksey v. Calvin*, 605 F. App'x 735, 738 (10th Cir. 2015).  The RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(e)-(g).

At step four, the agency must determine whether the claimant can perform previous work.  If a claimant shows that she cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.  *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003).  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)).

The claimant bears the burden of proof through step four of the analysis.  *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  *Id*.; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  *Thompson*, 987 F.2d at 1487 (citations omitted).

Finally, the ALJ must "articulate in every case how persuasive it finds the medical opinions and prior administrative medical findings of each medical source in the case record based upon consideration of all the regulatory factors in 20 C.F.R. § 405.1520c(c)(1-5)."  *Kelly Renee K. v. O'Malley*, No. CV 22-2518-JWL, 2024 WL 775838, at *3 (D. Kan. Feb. 26, 2024) (citing 20 C.F.R. § 404.1520c(b)(1)).  The two most important factors, which the ALJ must evaluate, are supportability (found in paragraph (c)(1)) and consistency (found in paragraph (c)(2)).  *See* 20

C.F.R. § 404.1520c(b)(2).  An ALJ does not have to consider the remaining three factors (found in paragraphs (c)(3) through (c)(5)), unless "two or more medical opinions or prior administrative medical findings are equally persuasive about the same issue." *Kelly Renee K.*, 2024 WL 775838, at *3 (quoting § 404.1520c(b)(3)).  Failure to comply with 20 C.F.R. § 404.1520c is grounds for (1) reversal of the Commissioner's final decision, and (2) a remand such that the reviewing court can properly assess how the ALJ reached his/her conclusions.  *See Parker v. Comm'r, SSA*, 772 F. App'x 613, 617 (10th Cir. 2019) (explaining that the SSA's legal error is grounds for reversal even if the decision appears supported by substantial evidence); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (stating that applying the incorrect legal standards is grounds for reversal).

## III.    Analysis

Plaintiff makes two primary challenges to the ALJ's decision.  First, she contends that the ALJ erred by finding the opinions of Nurse Practitioners Scarlett Virden and Danielle Keomany unpersuasive under the factors listed in 20 C.F.R. § 404.1520c.  (Doc. 9 at 14.)  She argues that this error resulted in improper analysis by the ALJ as to whether Plaintiff's impairments should have been presumed severe enough to render her disabled under step three.  (*Id.*)  Second, Plaintiff contends that the ALJ failed to adequately account for Plaintiff's moderate limitations in concentration, persistence, and pace when assessing and determining Plaintiff's RFC.  (*Id.* at 18.) The court considers each argument in turn.

### A.  The ALJ Complied with the Applicable Regulations in Finding Ms. Virden's and Ms. Keomany's Opinions Unpersuasive

Plaintiff argues that the ALJ erred by failing to articulate the consistency and supportability of the opinions of Ms. Keomany (Doc. 8 at 515–25) and Ms. Virden (*Id.* at 533–47), as required by 20 C.F.R. § 404.1520c.  (Doc. 9 at 15.)  The ALJ found both Ms. Virden's and Ms. Keomany's

opinions to be "unpersuasive."  (Doc. 8 at 31.)  The Commissioner argues that the ALJ's analysis adhered to the regulations.  (Doc. 13 at 5.)  The court upholds the ALJ's consideration of both opinions, as they complied with applicable regulations regarding supportability and consistency and relied on substantial evidence.

### 1.  Supportability and Consistency

An ALJ must consider five factors when evaluating a medical opinion's persuasiveness, which includes: supportability, consistency, relationship with the claimant, specialization, and other factors, such as "a medical source's familiarity with the other evidence in a claim."  20 C.F.R. § 404.1520c; *Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 (10th Cir. July 6, 2021). The two factors of supportability and consistency are the most important factors, and the ones that the ALJ is required to consider.  *See* 20 C.F.R. § 404.1520c(b)(2).  The remaining three factors (found in paragraphs (c)(3) through (c)(5)) need not be considered unless the medical opinions are equally persuasive on the same issue.  *Kelly Renee K.*, 2024 WL 775838, at *3 (quoting § 404.1520c(b)(3)).  Finally, an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."  *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (finding an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability").

Analysis of the supportability factor can be brief, if supported by the record.  *See Terwilliger v. Comm'r, Soc. Sec. Admin.*, 801 F. App'x 614, 619 (10th Cir. 2020) (stating the ALJ must consider whether the opinion is "'well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the

record'") (internal citation omitted) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). "If the opinion is not well-supported . . . 'the inquiry at this stage is complete.'" *Id*.

Analysis of consistency can similarly be brief. "The factor of consistency means a medical opinion is 'more persuasive' when it is 'more consistent' with evidence 'from other medical sources and nonmedical sources.'" *S.P. v. Kijakazi*, No. 22-1077-SAC, 2022 WL 4465080, at *3 (D. Kan. Sept. 26, 2022) (quoting 20 C.F.R. § 404.1520c(c)(2). The court will address the challenged opinions of Ms. Keomany and Ms. Virden in turn.

### 2. Nurse Practitioner Keomany

The ALJ considered a Social Security Disability Consultative Examination performed in January 2023 by Ms. Keomany. (Doc. 8 at 31.) She opined that Plaintiff would be capable of a significantly reduced range of sedentary work and was unable to walk or stand for more than one hour or sit more than two hours in an eight-hour workday. (*Id*.) The ALJ ultimately found her opinion unpersuasive because it was "inconsistent with the medical evidence in the file and not supported by the [Plaintiff's] capabilities during the exam." (*Id*. (citing *Id*. at 517–25).) The Commissioner argues that the ALJ's finding that Ms. Keomany's opinion is unpersuasive is supported by substantial evidence. (Doc. 13 at 6–7.) The court agrees.

The court will first address the issue of consistency between Ms. Keomany's opinions and her own objective findings. Here, the ALJ first determined that Ms. Keomany's opinion was not supported by her own medical findings. (Doc. 8 at 31.) Notably, Ms. Keomany stated that Plaintiff had a physical limitation restricted to standing and/or walking no more than one hour in an eight-hour workday; yet in her report, she states that Plaintiff has full strength in her extremities and a normal gait and station. (*Id*.) Further, Ms. Keomany stated in her opinion that when she examined Plaintiff walking on heels, walking on toes, squatting, and getting on and off the examination table,

it was all done without difficulty.  (*Id*. (citing *Id*. at 520.)   Additionally, Ms. Keomany's musculoskeletal examination while both sitting and standing revealed no tenderness, no muscle spasm, and normal strength throughout, further contradicting Ms. Keomany's significant sitting restrictions.  (*Id*. at 519-20.)  Pointing out these discrepancies, the ALJ held that such opinions taken from the noted objective medical evidence is inconsistent with Ms. Keomany's standing/walking physical limitation, and thus unpersuasive.

Moreover, Ms. Keomany's report indicates a severe sitting limitation—Plaintiff cannot sit for more than 15 minutes at a time or can sit for only two hours total in an eight-hour workday. (*Id*. at 31, 524.)  The ALJ again pointed out that such a limitation is directly contradicted by Ms. Keomany's own examination findings regarding Plaintiff's range of motion and musculoskeletal function.  (*Id*. at 519-20.)  Specifically, Ms. Keomany documented that Plaintiff demonstrated a full range of motion in her cervical spine, thoracic spine, and lumbar spine during the examination. (*Id*. at 519.)  She further noted that Plaintiff's straight leg raise test (done from the sitting position) was within normal ranges bilaterally and that Plaintiff had no motor, sensory, or reflex abnormalities from that position.  (*Id*. at 520–21.)  Lastly, all range of motion tests involving Plaintiff's hips and knees were within normal ranges.  (*Id*. at 522.)  In reviewing the entirety of Ms. Keomany's objective findings (*see id*. at 515–25), the court has trouble finding justification for her opinion that Plaintiff cannot sit for more than 15 minutes at a time or can sit for only two hours total in an eight-hour workday—a severe sedentary restriction.  (*Id*. at 31, 524.)  In reviewing the record, the court finds the ALJ's decision—that Ms. Keomany's sitting limitation contradicts her own objective medical evidence and is thus unpersuasive—to be rational and supported by substantial evidence.  *See Graham*, 794 F. Supp. at 1047 ("[T]he court must scrutinize the entire record in determining whether the [Commissioner's] conclusions are rational" and will uphold

them if "a reasonable mind might accept [them] as adequate to support a conclusion.").The court will next address the issue of whether Ms. Keomany's findings are supported by the record. The ALJ identified several instances where records from other medical providers—spanning from November 2021 to November 2022—contradicted the near sedentary limitations Ms. Keomany proposed for Plaintiff. (*Id*. (citing *Id*. at 604–14.) For example, Ms. Keomany opined that Plaintiff was limited to sitting no more than two hours in an eight-hour workday; but just three months prior, Plaintiff had an examination with Nurse Practitioner Cherie Bahm who observed a slightly reduced range of motion in Plaintiff's spine and normal, unassisted gait and station. (*Id*.) Further, Ms. Bahm noted in her exam that Plaintiff had no abnormalities in strength, sensation, or reflexes, all of which contradicts Ms. Keomany's recommendations. (*Id*.) This indicates that the ALJ considered both the supportability and the consistency of Ms. Keomany's opinion as against the medical record. 20 C.F.R. § 404.1520c(b)(2).

Moreover, the ALJ also considered the prior administrative medical findings of the state agency medical consultants and psychological consultants. (Doc. 8 at 29–31.) Ultimately, the ALJ found those opinions persuasive because they were supported by Plaintiff's capabilities during the respective exams and were consistent with the other medical evidence on the record. (*Id*.) All of this led to the conclusion that Ms. Keomany's opinion was unpersuasive—a conclusion sufficiently supported by substantial evidence. (*Id*. at 31.) "Although an ALJ is not an acceptable medical source qualified to render a medical opinion, 'the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.'" *Susan Michelle H. v. Kijakazi*, No. CV 21-2131-JWL, 2022 WL 1984033, at *7 (D. Kan. June 6, 2022) (citing *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). Because the RFC assessment is made based on "all of the evidence in the record, . . . [it is] well within the province of the ALJ" to weigh differing opinion

evidence from providers against the entire medical record and give less or no weight to certain opinions. *Dixon v. Apfel*, No. 98-5167, 1999 WL 651389, at *2 (10th Cir. Aug. 26, 1999). That is exactly what the ALJ did here. The court finds substantial evidence to uphold the ALJ's decision that Ms. Keomany's opinion is unpersuasive because it is not supported by the record nor consistent with her own objective medical findings. *Tarpley v. Colvin*, 601 F. App'x. 641, 643 (10th Cir. 2015) (stating that substantial evidence is "more than a scintilla, but less than a preponderance.").

### 3.  Nurse Practitioner Virden

The ALJ considered a Treating Source Statement submitted by Ms. Virden. (Doc. 8 at 31.) Ms. Virden opined that Plaintiff would have marked limitations in multiple areas of physical functioning, would be off task more than 25% of the workday, would miss more than four days of work a month (the highest available category), avoid lifting in excess of 10 pounds, would require a break from work every 15 minutes, could never stand to work, can sit no more than four to six hours in an eight-hour workday with a sit-stand "at will" option, and would require the option to lay down or recline between 40 minutes and two hours during an eight hour workday. (*Id*. (citing *Id*. at 543–47).) The ALJ found Ms. Virden's opinion unpersuasive, stating that "[t]his opinion is inconsistent with the medical evidence in the file and is not supported by Ms. Virden's own treatment notes." (*Id*. at 31.) The Commissioner argues that the ALJ's finding that Ms. Virden's opinion is unpersuasive is supported by substantial evidence. (Doc. 13 at 7–8.) Plaintiff argues that had the ALJ properly assessed the supportability and consistency of Ms. Virden's opinion, then the ALJ would have found it persuasive. (Doc. 9 at 18.) The court disagrees and upholds the ALJ's conclusion.

The court first addresses supportability and consistency between Ms. Virden's opinions and the external objective medical evidence in the record. The ALJ found that Ms. Virden's opinion was unsupported by external medical opinions. (*Id*.) Namely, the ALJ points to the opinion of Shawn R. Morrow, D.O., who examined Plaintiff and noted normal gait, normal motor function in all four extremities, a "preserved range of motion with slight loss in the rotation of the cervical region," and Plaintiff had no difficulty with movement exercises except for hopping, where there was "mild difficulty." (*Id*. (citing *Id*. at 498–500).) The ALJ also pointed to the opinion of Ms. Bahm who observed a slightly reduced range of motion in Plaintiff's spine and normal, unassisted gait and station. (*Id*.) These objective findings are consistent with the ALJ's finding that Plaintiff has the RFC to perform medium work as defined in 20 CFR 404.1567(c). (*Id*.) As a result, the ALJ reasonably concluded that Ms. Virden's opinion limiting Plaintiff to a significantly reduced range of sedentary work lacked support from the broader medical record.

Next, the court considers supportability and consistency between Ms. Virden's opinions and her own objective findings. While the ALJ concluded that Ms. Virden's opinion was internally contradictory, upon review of Ms. Virden's treatment notes, this court cannot identify clear internal contradictions within her medical findings that would render her opinion unpersuasive on that basis. (*Id*. at 533-47.) Nonetheless, this deficiency in articulation is immaterial because the ALJ's determination remains supported by substantial evidence from the record as a whole. *See Martinez v. Comm'r, SSA*, 777 Fed. Appx. 930 (10th Cir. 2019) (holding ALJ's failure to address regulatory factors in weighing medical opinion was harmless where RFC finding was consistent with substantial evidence from the record).

The ALJ cited ample conflicting medical evidence demonstrating that Ms. Virden's functional restrictions are not consistent with the record. (*Id*. at 31.) Dr. Morrow's examination

reflected objective findings compatible with medium work capacity—normal gait, full motor strength, no difficulty performing a range of postural tasks, and only mild limitation in spinal range of motion tests (both from the sitting and standing positions)—which directly contradicted Ms. Virden's opinion that Plaintiff could never stand to work or lift even ten pounds.  (*Id.* (citing *Id.* at 498-500, 543-47).)  Likewise, Ms. Bahm's examination and the state agency consultants' assessments documented functional abilities consistent with medium work, not sedentary work. Collectively, these findings constitute "[s]ubstantial evidence [which] is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023) (internal quotation marks omitted). A reasonable mind—such as that of Dr. Morrow, Ms. Bahm, and the state agency consultants—could readily conclude that Ms. Virden's sedentary work limitation is unsupported by the medical record.

As a fundamental principle, this court "may not reweigh the evidence nor substitute [its] judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).  The court's role is limited to determining whether substantial evidence supports the ALJ's decision, "regardless of whether we would have reached a different result based on the record." *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  Thus, even if the ALJ's discussion of internal inconsistency was cursory or vague, the ultimate conclusion remains legally sound so long as it is traceable to substantial evidence.  *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) ("[I]f the ALJ's decision is supported by substantial evidence in the record and his findings can be traced to that evidence, we will not reweigh it.").  Here, the ALJ's reasoning—that Ms. Virden's opinion is unpersuasive because it conflicts with substantial medical evidence from Dr. Morrow, Ms. Bahm, and the state agency consultants—is a readily traceable conclusion that is well supported by the record.  In other words, the ALJ has given specific, legitimate reasons for

finding Ms. Virden's opinion unpersuasive, even if self-contradictory reason is not fully articulated. *See Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1177 (10th Cir. 2014) (citing *Watkins v. Barnhart,* 350 F.3d 1297, 1301 (10th Cir.2003)) ("'[T]he ALJ must give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion,' and if he 'rejects the opinion completely, he must then give specific, legitimate reasons for doing so.'").

Finally, it bears repeating that "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record," including assessing the persuasiveness of multiple, and sometimes conflicting, medical opinions. *Howard*, 379 F.3d at 949. The standard is that the ALJ have substantial evidence supporting his/her determination of persuasiveness. *Tarpley*, 601 F. App'x. at 643. It is not the place of this court to review the weight of evidence, only its sufficiency. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990) ("We must evaluate the record to ascertain whether there is evidence to support the ALJ's decision, regardless of whether we would have reached a different result based on the record.") (citing *Brown v. Bowen*, 801 F.2d 361, 362 (10th Cir.1986)). Because substantial evidence supports the ALJ's finding that Ms. Virden's opinion is inconsistent with and unsupported by the broader medical record, the ALJ's conclusion stands. Thus, the court upholds the ALJ's determination that Ms. Virden's opinion was unpersuasive.

## B. The RFC Is Supported by Substantial Evidence

Plaintiff raises two specific challenges to the ALJ's RFC determination. First, although the ALJ found at step three that Plaintiff had limitation in "concentrating, persisting, or maintaining pace," the RFC does not contain a limitation which corresponds to this moderate mental impairment. (Doc. 9 at 18–22 (citing Doc. 8 at 26, 29).) Second, Plaintiff contends the ALJ failed to adequately explain the absence of such a corresponding RFC limitation, as he was

obligated to do.  (*Id.*)  The Commissioner asserts that substantial evidence supports the ALJ's RFC determination.  (Doc. 13 at 9–12.)  The court agrees.

The ALJ found, at step three, that Plaintiff had moderate limitations in one of the four "paragraph B" criteria: concentrating, persisting, or maintaining pace.  (Doc. 8 at 26.)  This limitation is "not an RFC assessment but [is] used to rate the severity of mental impairment(s)." SSR 96–8p, 1996 WL 374184, at *4 (July 2, 1996).  In other words, the ALJ was not automatically required to incorporate these exact limitations into Plaintiff's RFC—contrary to Plaintiff's suggestions.  *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013) ("The ALJ was under no obligation to include limitations in social functioning in [claimant's] RFC based solely on his finding that she had "moderate difficulties" in social functioning as part of the distinct step-three analysis.").

However, the ALJ is required to include similar limitations in the RFC or thoroughly explain their omission.  That is, the law requires explanation, not automatic inclusion.  *Crowder v. Colvin*, 561 F. App'x 740, 745 (10th Cir. 2014) ("If the ALJ again chooses to assess moderate impairments in concentration, persistence, and pace at step three, but not to include any limitation on concentration, persistence, and pace in the RFC at step four, he should explain the basis for his decision").  Thus, the court must determine whether the RFC in the current case contains limitations sufficiently covering the moderate limitation determined by the ALJ in Plaintiff's concentration, persistence, and pace at step three.  And, if it does not, whether the ALJ adequately explained the omission in his RFC analysis.

Plaintiff's RFC includes the following limitation: "claimant has the ability to understand, follow, and complete simple, repetitive, routine tasks, and instructions in jobs with no more than occasional changes in the work setting."  (Doc. 8 at 26.)  The court will hereafter refer to this

14

portion of the RFC limitation as "unskilled work." *See Lager v. Comm'r*, No. 22-4116, 2023 WL 6307490, at *2 n.1 (10th Cir. Sept. 28, 2023) (stating that "simple" and "unskilled" work or tasks are essentially equivalent).[3]   The parties dispute whether the unskilled work RFC limitation sufficiently covers Plaintiff's moderate mental limitation in concentrating, persisting, and maintaining pace, as identified by the ALJ in step three.  (Doc. 8 at 26.)

The critical inquiry in solving this dispute is whether the ALJ reviewed sufficient and distinct medical evidence in justifying and explaining his RFC limitation.   The parties, understandably, point to seemingly conflicting precedent.  *Compare Vigil*, 805 F.3d at 1204 ("[T]he ALJ accounted for [the claimant]'s moderate concentration, persistence, and pace problems in his RFC assessment by limiting him to unskilled work."); *with Umbenhower v. Colvin*, No. 13-1398-SAC, 2015 WL 1470494, at *3 (D. Kan. Mar. 31, 2015) (holding that an RFC that limited the claimant to simple, routine, and repetitive tasks failed to "include any limitations in concentration and attention.").  The apparent tension between these authorities dissolves when examined through their specific factual contexts.

In *Vigil*, the ALJ explained and pointed to substantial evidence which showed that while the claimant had some concentration deficits (impaired and delayed recall, inability to spell in reverse, or recall the President's name) such that he "could not be expected to perform complex tasks," he did retain sufficient cognitive abilities consistent with the ability to conduct "unskilled work."  805 F.3d at 1203–04.  These sufficient cognitive abilities were demonstrated by a normal ability to recall items, and the ability to spell words forward, which indicated that claimant

---

[3] "Unskilled work generally requires only the following: (1) '[u]nderstanding, remembering, and carrying out simple instructions'; (2) '[m]aking judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions'; (3) '[r]esponding appropriately to supervision, co-workers and usual work situations'; and (4) '[d]ealing with changes in a routine work setting.'" *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) (quoting SSR 96–9p, 1996 WL 374185, at *9 (July 2, 1996)).

"retain[ed] enough memory and concentration to perform at least simple tasks." *Id*. And moreover, the *Vigil* court concluded that "in this case, . . . limiting the plaintiff to an SVP [Specific Vocational Preparation] of only one or two[ ] adequately took into account his moderate limitations in concentration, persistence, and pace." *Id.* at 1204; *see also* 20 CFR 404.1568 (noting that the SSA considers occupations with SVP level two to be unskilled). Simply put, the ALJ in *Vigil* noted evidence of both deficiencies in, and sufficient retainment of, the ability to concentrate.

*Umbenhower* is different. In *Umbenhower*, the court found the ALJ's decision inadequate based on the objective medical evidence he reviewed. Specifically, the *Umbenhower* court emphasized that all of the medical opinions and the ALJ himself opined that "[claimant] had difficulty with both attention and concentration," yet never mentioned—as was mentioned in *Vigil*—that claimant still retained sufficient levels of concentration to at least perform simple or unskilled tasks. 2015 WL 1470494, at *3. In other words, in *Umbenhower*, the ALJ placed an RFC mental limitation on the claimant to simple, routine, and repetitive tasks without any medical opinions stating the claimant would be capable of them. *See id*. at *2–4. In sum, the ALJ noted evidence of deficiencies in the ability to concentrate but never mentioned the claimant's ability to retain enough concentration to perform simple or unskilled tasks.

The current case clearly resembles *Vigil*. Here, after the ALJ found a moderate limitation in the Plaintiff's concentration, persistence, and maintaining pace at step three, the ALJ explicitly discussed those abilities in the RFC analysis that followed. (Doc. 8 at 26–33 (citing *Id*. at 76–79, 93–94, 500–04, 521–27, 543–50)).) This discussion included: (1) In February 2023, Dr. Wunderlich opined that the Plaintiff had a "moderate limitation in sustaining concentration, persisting, or maintaining pace, and would be limited in understanding complex instructions," yet

she "could sustain appropriate relationships with supervisors, coworkers, and the general public";[4] (2) Dr. Leahy opined that Plaintiff's "attention and memory were impaired, which may make novel or complex employment tasks difficult," yet she was attentive to simple instructions and able to carry out some simple tasks; and (3) the opinions of two state agency psychologists—Dr. Marta Madera-Ruiz and Dr. Crystal M. Duclos—who found that Plaintiff was capable of performing unskilled work and could "sustain concentration, persistence, and pace to carry out 3- and 4-step tasks." (*Id.*) Finally, the ALJ referenced a Disability Determination Explanation from July 2022, which found that "[Plaintiff] was capable of simple, repetitive tasks, and had no more than moderate limitations in the four broad areas of mental functioning." (*Id.* at 29 (citing *Id.* at 80–87.) Resembling the evidence presented in *Vigil*, these discussions make clear that the ALJ in making his RFC determination sufficiently assessed that Plaintiff could not be expected to perform complex tasks—*i.e.*, deficiencies in concentration, persistence, and maintaining pace—but retained enough concentration to perform at least simple or unskilled tasks. (*Id.* at 26.)

The ALJ's RFC determination is further supported by the fact that he limited Plaintiff's type of work activity to "simple . . . instructions in jobs with no more than occasional changes in work settings." (*Id.* at 26.) This qualifier reflects the ALJ's consideration of Plaintiff's limitations in concentration, persistence, and pace, as documented by the medical opinions of Dr. Leahy and Dr. Wunderlich. (*Id.* at 500–04, 521–27, 543–50.) Specifically, the ALJ's limitation to "simple . . . instructions" incorporates Dr. Wunderlich's opinion that Plaintiff would have difficulty with complex instructions (*id.* at 26, 521–27, 543–50); while the limitation to routine work with "occasional changes" addresses Dr. Leahy's concern that "novel or complex employment tasks"

---

[4] Dr. Wunderlich's assessments of Plaintiff's ability to interact with coworkers and supervisors is taken nearly verbatim from a Social Security Ruling that defines the attributes of "unskilled" or "simple" work. *See* SSR 96–9p, 1996 WL 374185, at *9 (July 2, 1996) (stating that an attribute of unskilled or simple work is "[r]esponding appropriately to supervision, co-workers and usual work situations").

would be difficult due to Plaintiff's attention impairments (*id*. at 26, 500–04.) *See Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) ("[A]n [ALJ] can account for moderate limitations by limiting the claimant to particular kinds of work activity.").  Here, the ALJ did just that by placing specific restrictions on the Plaintiff's RFC.

Additionally, the ALJ limited Plaintiff's prospective jobs to those with an SVP of only two, further indicating that the ALJ properly took the Plaintiff's moderate limitation into account when making his RFC determination.  *See Vigil*, 805 F.3d at 1204 ("[I]n this case, . . . limiting the plaintiff to an SVP of only one or two[] adequately took into account his moderate limitations in concentration, persistence, and pace.").

Finally, the ALJ's analysis took into consideration Plaintiff's hearing testimony, which showed preserved cognitive abilities that support the RFC assessment.  *Kochase v. Astrue*, No. 07-1190 MLB, 2008 WL 852123, at *7 (D. Kan. Mar. 28, 2008) (holding that "support of [an] RFC finding[]" can come from "[claimant]'s own testimony.").  The ALJ noted that Plaintiff was "able to answer detailed questions about her past relevant work, medical history, and activities of daily living" during the hearing, which demonstrated functional cognitive capacity.  (*Id*. at 26.)  Thus, the ALJ's explicit limitation in the RFC to simple tasks adequately and reasonably addresses Dr. Leahy's concerns about "complex employment tasks" and Dr. Wunderlich's opinion regarding complex instructions, while recognizing the two state agency psychologists' opinions that Plaintiff was capable of "sustain[ing] concentration, persistence, and pace" sufficient to perform unskilled work.  (*Id* at 26–33.)

In summary, the ALJ addressed the relevant medical evidence, including Plaintiff's difficulties with cognitive tasks, addressed Plaintiff's daily activities, and the opinions concerning the mental limitations throughout his decision.  (*Id*.)  In so doing, the ALJ reasonably concluded

that he accommodated these limitations by finding Plaintiff's RFC to include "simple, routine, and repetitive tasks." (*Id*. at 26.) That finding is supported by the record evidence and the objective medical evidence. Thus, while a "limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments" (*Groberg v. Astrue*, 505 F. App'x 763, 770 (10th Cir. 2012)); here, the ALJ did much more than that, thoroughly "account[ing] for mental limitations by limiting the claimant to particular kinds of work." *See Parker*, 772 F. App'x at 616. As such, substantial evidence supports the ALJ's RFC determination that accounted for Plaintiff's moderate limitations in concentration, persistence and maintaining pace by limiting her to unskilled work. *See William Edward S. v. Saul*, No. CV 19-1061-JWL, 2020 WL 569806, at *9 (D. Kan. Feb. 5, 2020) (upholding an ALJ's decision where the moderate limitations "in concentrating, persisting, or maintaining pace" were properly accounted for in the RFC "by a limitation . . . to simple routine tasks.").

In conclusion, this court must affirm an ALJ's decision if substantial evidence supports it. *See Tarpley*, 601 F. App'x. at 643. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.* That much exists here.

## IV.    Conclusion

The Commissioner's decision denying Plaintiff's application is AFFIRMED. The clerk is directed to enter judgment in accordance with this order.

IT IS SO ORDERED. Dated this 20th day of October, 2025.

_____s/ John W. Broomes_____
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE